IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JACQUELINE B. BLICKLE ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | No. 12 C 9795 |
| ) | |
| ILLINOIS DEPARTMENT OF CHILDREN ) | Judge Virginia M. Kendall |
| AND FAMILY SERVICES, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jacqueline Blickle filed a complaint against Defendant Illinois Department of Children and Family Services ("DCFS") alleging violations of the Americans with Disabilities Act, 42 U.S.C. § 12112, and the Age Discrimination in Employment Act, 29 U.S.C. § 623. DCFS has moved pursuant to Federal Rule of Civil Procedure 12(b)(6) to dismiss certain claims alleged in Blickle's Complaint. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are taken from Blickle's Complaint and are assumed to be true for purposes of the Motion to Dismiss. *See Voelker v. Porsche Cars North America, Inc.,* 353 F.3d 516, 520 (7th Cir. 2003); *Murphy v. Walker,* 51 F.3d 714, 717 (7th Cir. 1995). DCFS hired Blickle in 1995 to serve as a Child Welfare Nurse Specialist. (*See* Complaint, Doc. 1 at ¶ 10.) Her home office was in Aurora, Illinois; however, her job required her to travel to other DCFS field offices in Kankakee, Joliet and Glen Ellyn, Illinois. (*Id.*) Blickle suffered from arthritis in her back. (*Id.* at ¶ 12.) The arthritis was so severe by September 2009 that it was disabling.

(*Id.*) However, Blickle continued to complete her job responsibilities for DCFS, including traveling to the other field offices. (*Id.*) In March 2010, Blickle requested in writing for DCFS to accommodate her arthritic condition by transferring her home office to Glen Ellyn, which was located closer to where she received therapy for her condition in Woodridge, Illinois. (*Id.* at ¶ 13.) This accommodation would allow Blickle to work a full day for DCFS and then attend therapy sessions after work. (*Id.*) The accommodation would not have resulted in any change in Blickle's daily activities or her ability to fulfill any responsibilities at the various DCFS field offices. (*Id.*)

DCFS did not respond to Blickle's written request for accommodation. (*Id.* at ¶ 14.) In April 2010, Edgar Hernandez, DCFS' Statewide Clinical Manager and head of the Aurora field office, came to Blickle's cubicle and threw down her request for accommodation on her desk. (*Id.* at ¶ 15.) Hernandez told Blickle that it appeared due to her medical history that she may not be able to do her job. (*Id.*) Blickle understood this statement to be a threat to drop her accommodation request or be fired. (*Id.*)

In mid-April 2010, Blickle attended a monthly DCFS Nurse's Meeting in Chicago, Illinois. (*Id.* at ¶ 16.) During a break in the meeting, Blickle's supervisors, Jerrilyn Pearson-Minor and Jane Kelly, called her to the cafeteria. (*Id.*) Minor and Kelly told Blickle that DCFS had received her accommodation request but stated that DCFS required more documentation from her before it could be processed. (*Id.*) Subsequently, Blickle contacted the State of Illinois about her request. (*Id.*) She was told that her request for accommodation required no further documentation and that she should not respond any further to her supervisor's demands. (*Id.*) However, Blickle's request for accommodation was never granted. (*Id.* at ¶ 17.) Blickle retired in December 2010. (*Id.* at ¶ 18.) She was 70 years old. (*Id.*)

After exhausting her administrative remedies, Blickle filed this lawsuit in which she asserts claims under both the ADA and the ADEA. Specifically, she alleges that DCFS violated the ADA because: (1) it failed to accommodate her disability; (2) it constructively discharged her because of her disability; (3) it created a hostile work environment; and (4) it retaliated against Blickle for requesting an accommodation. Alternatively, Blickle alleges that DCFS violated the ADEA because: (1) she was constructively discharged due to her age; (2) it created a hostile work environment for Blickle due to her age; and (3) it retaliated against her because of her complaints about the discrimination against her based on her age. DCFS concedes that Blickle has adequately alleged a failure to accommodate claim. However, it moves to dismiss the remainder of her claims pursuant to Rule 12(b)(6).

## LEGAL STANDARD

When considering a motion to dismiss under Rule 12(b)(6) the Court accepts as true all of the well-pled facts alleged in the complaint and construes all reasonable inferences in favor of the nonmoving party. *See Killingsworth v. HSBC Bank Nevada, N.A.*, 507 F.3d 614, 619 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that, when "accepted as true . . . state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal quotations omitted). In analyzing whether a complaint meets this standard the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678. When the factual allegations are well-pled the Court assumes their veracity and then

3

determines if they plausibly give rise to an entitlement to relief. *See id.* at 679. A claim has facial plausibility when the factual content pled in the complaint allows the Court to draw a reasonable inference that the defendant is liable for the misconduct alleged. *See id.* at 678.

## **DISCUSSION**

### I. The ADA Claims

The ADA prohibits an employer from discriminating against "a qualified individual with a disability because of the disability of such individual..." 42 U.S.C. § 12112. The ADA prohibits an employer: (1) from making an adverse employment decision, such as termination or denial of benefits, when that decision is based on a qualified individual's actual or perceived disability; or (2) from not making a reasonable accommodation to the known physical or mental limitations of an otherwise qualified individual with a disability. *See* 42 U.S.C. §§ 12112(a), 12112(b)(3)-(5); *see also Weigel v. Target Stores,* 122 F.3d 461, 463-64 (7th Cir. 1997). Disparate treatment and failure to accommodate claims are analyzed differently. *See Timmons v. GMC,* 469 F.3d 1122, 1126 (7th Cir. 2006) (internal citations omitted).

In analyzing a disparate treatment claim, a court should employ the *McDonnell Douglas*[1] burden-shifting framework. *See id*; *see also Weigel,* 122 F.3d at 464. Under this framework, a plaintiff may establish disparate treatment by either direct or indirect means. *See Timmons,* 469 F.3d at 1126. If a plaintiff attempts to prove her case by indirect means, she must establish a prima facie case of discrimination. *See id.* This means the plaintiff must present evidence adequate to create an inference that an employment decision was based on an illegal, discriminatory criterion. *See id.* If she succeeds in doing so, the defendant must articulate a legitimate, non-discriminatory reason for the disparate treatment. *See id.* To overcome a

---

[1] *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973).

sufficient showing by the defendant, a plaintiff must then establish that this proffered reason is really a pretext for discrimination. *See id.* For pleading purposes however, a plaintiff states a disparate treatment claim if they allege facts sufficient to make it plausible they can establish a prima facie case of discrimination.

### A. The Constructive Discharge Claim

DCFS contends that Blickle fails to state a claim for disparate treatment because she failed to sufficiently allege an adverse employment action. However, Blickle alleges that DCFS forced her to resign, *i.e.,* constructively discharged her, because she was disabled. Constructive discharge, like actual discharge, is a materially adverse employment action. *See EEOC v. University of Chicago Hospitals,* 276 F.3d 326, 331 (7th Cir. 2002). To prove constructive discharge, a plaintiff "must show that she was forced to resign because her working conditions, from the standpoint of the reasonable employee, had become unbearable." *Id.* (citing *Lindale v. Tokheim Corp.,* 145 F.3d 953, 955 (7th Cir. 1998)); *see also EEOC v. Sear, Roebuck & Co.,* 233 F.3d 432, 440 (7th Cir. 2000) (holding that to prove constructive discharge, a plaintiff must show that her working conditions were made so intolerable that a reasonable person in her position would be forced to resign, rather than stay on the job while seeking redress).

In this case, Blickle alleges that she suffered from a debilitating arthritic back condition that required therapy. In order to complete a full work day and visit her back therapist, Blickle needed to work out of the Glen Ellyn office, instead of the Aurora office. DCFS refused to transfer her to the Glen Ellyn office even though it would not have affected Blickle's day-to-day duties. Because she could not see her back therapist and perform her job while working from the Aurora office, Blickle retired. While Blickle may be unable to eventually prove that DCFS constructively discharged her due to her disability, her allegations are sufficient to withstand a

motion to dismiss. A jury could find that a reasonable person would resign instead of enduring severe pain to perform his or her job. *See, e.g., Baldwin v. Board of Trustees of the University of Illinois,* No. 10 C 5569, 2012 WL 3292831, at *3 (N.D. Ill. Aug. 8, 2012) (finding plaintiff sufficiently alleged constructive discharge for a claim under the Family Medical Leave Act where employer denied requests for accommodation because "if [plaintiff] were required to endure extreme pain or forego lifesaving treatment because of the defendant's refusal to allow her to see her doctor, a jury might reasonably find that, under those circumstances, a reasonable person would have resigned"); *Sturz v. Wisconsin Department of Corrections,* 642 F. Supp. 2d 881, 891 (W.D. Wis. 2009) (finding that "[a] reasonable jury could find that plaintiff's conditions were objectively intolerable as a result of defendant's failure to accommodate her...[because] [a]n employee should not have to choose between her job and hear health.").

DCFS' reliance on the Seventh Circuit's decision in *EEOC v. Sears, Roebuck & Co.* is misplaced. There, the Seventh Circuit concluded that denials for requests for accommodation did not rise to the level necessary to establish a constructive discharge. However, that was because the plaintiff requested the employer to accommodate her schedule so that she could attend "Bingo night" and clean her house. *See* 233 F.3d at 441. Not allegations that she was denied the ability to visit her doctor to relieve her debilitating pain. Accordingly, *Sears* does not control here.

Additionally, DCFS' argument that the Complaint fails to show that Blickle's working conditions had become unbearable because she was willing to continue her employment if she was assigned to the Glen Ellyn office misses the point. Blickle alleges that she was constructively discharged due to the failure to accommodate her disability. The transfer to Glen Ellyn would have accommodated that disability. It was the pain that resulted from being unable

6

to see her doctor due to the location of her home office that led to her retirement. This is sufficient to state a constructive discharge claim.

### B. Hostile Work Environment Claim

Blickle also alleges that she was subjected to a hostile work environment in violation of the ADA. A hostile work environment is one where a plaintiff was subject to harassment "so severe and pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Faragher v. City of Boca Raton,* 524 U.S. 775, 786 (1998) (internal citations and quotations omitted). To establish a hostile work environment claim, "a plaintiff must show that his or her work environment was both subjectively and objectively hostile." *Silk v. City of Chicago,* 194 F.3d 788, 804 (7th Cir. 1999). To be objectively hostile, a reasonable person must find the environment abusive. *See id.* (citing *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, 21 (1993)). In determining whether a workplace is objectively hostile, a court should consider "the frequency of the discriminatory conduct; its severity; whether it was physically threatening or humiliating; or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (quoting *Harris,* 510 U.S. at 21.)).

The crux of Blickle's complaint focuses on the alleged failure to accommodate her disability not that she was subjected to a hostile work environment. Blickle's only allegation regarding alleged abusive behavior in the workplace is her allegation that her supervisor, Edgar Hernandez, threw Blickle's request for accommodation on her desk. This allegation alone is insufficient to plausibly plead that Blickle was subjected to a work environment permeated by discriminatory intimidation, ridicule or insult. *See Ford v. Minteq Shapes & Servs., Inc.,* 587 F.3d 845, 847-48 (7th Cir. 2009) (holding that occasional comments do not create a hostile work environment); *see also, e.g., Jones v. United Airlines,* No. 11 C 6374, 2012 WL 216741, at *8

(N.D. Ill. Dec. 13, 2012) ("a single incident is not sufficient to create a hostile working environment"). Therefore, she has failed to sufficiently plead a hostile environment claim and this claim must be dismissed.

### C. Retaliation Claim

DCFS also moves to dismiss Blickle's ADA retaliation claim. Section 12203 of the ADA prohibits employers from discriminating against a party because that party engaged in an activity protected by the ADA. *See* 42 U.S.C. § 12203(a); *see also Kersting v. Wal-Mart Stores, Inc.,* 250 F.3d 1109, 1117 (7th Cir. 2001). This section also prohibits an employer from coercing, threatening or interfering with an employee's exercise of his or her rights under the ADA. *See* 42 U.S.C. § 12203(b). To establish a claim for retaliation using the indirect method of proof, a plaintiff must offer evidence that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *See Kersting,* 250 F.3d at 1117. Here, DCFS only contests whether Blickle has sufficiently alleged the adverse employment action element of her retaliation claim. However, as described above, Blickle has sufficiently alleged an adverse employment action because she alleged that she was constructively discharged as a result of receiving no accommodation for her disability. Therefore, DCFS' motion is denied with respect to this claim.

## II. The ADEA Claims

The ADEA prohibits an employer from terminating an individual or otherwise discriminating against an individual with respect to his or her compensation, terms, conditions, or privileges of employment because of the individual's age. 29 U.S.C. § 623. To establish a violation of the ADEA, an employee must show that age actually motivated an adverse employment action. *See Van Antwerp v. City of Peoria,* 627 F.3d 295, 297 (7th Cir. 2010); *Faas*

8

*v. Sears, Roebuck & Co.,* 532 F.3d 633, 641 (7th Cir. 2008). In other words, "age must have played a role in the employer's decision-making process and had a determinative influence on the outcome." *Van Antwerp,* 627 F.3d at 297 (citing *Schuster v. Lucent Techs., Inc.,* 327 F.3d 569, 573 (7th Cir. 2003)). Like a disparate treatment ADA claim, an employee may prove an ADEA claim either directly or indirectly. The indirect method uses the same *McDonnell-Douglas* framework described above.

In the alternative to her ADA claims, Blickle alleges that she was constructively discharged because of her age, she was subjected to a hostile work environment due to her age and that she was retaliated against for engaging in protected activity under the ADEA. However, her Complaint is devoid of any allegations that plausibly suggest she was discriminated against on the basis of her age. Blickle's ADEA claim is composed of the following allegations: (1) Blickle is 70 years old (Doc. at ¶ 18); and (2) that "[p]rior to Blickle's termination, other similarly-situated employees at DCFS, each substantially younger than Blickle, were properly and promptly granted their home office transfer requests." (*Id.* at ¶ 39.) This is insufficient to state a claim for a violation of the ADEA. While Blickle does not need to allege the who, what, when, where and how of her ADEA claim as the defense suggests, she must provide more than a bare recitation of the elements. *See Iqbal,* 129 S.Ct. at 1951. Outside of pleading the fact that she is seventy years old, Blickle provides no factual allegations to support her ADEA claim. This is insufficient under *Twombly* and *Iqbal.* Additionally, Blickle's ADEA hostile work environment claim fails for the same reasons as her ADA hostile work environment claim.

## CONCLUSION

For the reasons set forth above, the motion to dismiss is granted in part and denied in part. The motion is denied with respect to Blickle's claims for constructive discharge and

retaliation under the ADA. The motion is granted with respect to Blickle's claim of hostile work environment under the ADA and all of her claims under the ADEA. Those claims are dismissed without prejudice. Blickle is granted leave to amend her complaint with respect to those claims. Any amended pleading must be filed within fourteen days of the entry of this Order.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: June 7, 2013